985 So.2d 71 (2008)
In re Darrel D. RYLAND.
No. 2008-B-0273.
Supreme Court of Louisiana.
June 6, 2008.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Darrel D. Ryland, an attorney licensed to practice law in Louisiana.

*72 UNDERLYING FACTS
In October 2004, Anita Gremillion retained respondent to handle her divorce and ancillary matters. In May 2005, while the representation was ongoing, respondent and Ms. Gremillion began to develop a mutual attraction towards one another. On June 13, 2005, the trial judge signed a judgment of divorce pursuant to Article 102 of the Louisiana Civil Code. The judge also signed a consent judgment as to child custody and support, leaving only the partition of the community property to be determined. The following day, respondent and Ms. Gremillion entered into a consensual sexual relationship. The affair ended several months later, at which time respondent withdrew from representing Ms. Gremillion in the domestic matter.

DISCIPLINARY PROCEEDINGS
In April 2006, respondent self-reported his misconduct to the ODC. Approximately two weeks later, Ms. Gremillion filed a complaint against respondent with the ODC based upon the same allegations. On January 3, 2007, the ODC filed one count of formal charges against respondent, alleging that his conduct as set forth above violated the following provisions of the Rules of Professional Conduct: Rules 1.7(a)(2) (conflict of interest) and 8.4(a) (violation of the Rules of Professional Conduct).
In his answer to the formal charges, respondent admitted that he entered into a consensual sexual relationship with a client. Respondent further admitted this conduct violated the Rules of Professional Conduct.

Hearing Committee Report
This matter proceeded to a hearing in mitigation, at which respondent and Ms. Gremillion testified. Thereafter, the hearing committee filed its report with the disciplinary board. In its report, the committee emphasized that notwithstanding some dispute as to largely irrelevant facts  for example, which party initiated the intimate relationship  the relationship between respondent and Ms. Gremillion was at all times clearly consensual and the result of mutual attraction between the parties. The committee further found that respondent did not fully advise Ms. Gremillion of the potential for conflict arising out of their relationship, as he failed to inform her that child custody, visitation, and parental fitness could be reviewed at any time in her case, and that an intimate sexual relationship between them could potentially prompt her ex-husband to challenge her parental fitness or seek a change in custody or visitation. Accordingly, the committee found that respondent violated Rule 1.7 of the Rules of Professional Conduct, as well as Rule 8.4(a).
The committee found that respondent violated a duty owed to his client. He acted knowingly in entering into the intimate relationship. Respondent conceded that his misconduct presented a risk of potential harm to Ms. Gremillion, but the committee agreed there was no clear and convincing evidence of any actual harm. The committee determined that under the ABA's Standards for Imposing Lawyer Sanctions, the baseline sanction for respondent's misconduct is a suspension from the practice of law.
The committee found that the following aggravating factors are present: substantial experience in the practice of law (admitted 1974) and vulnerability of the victim. In mitigation, the committee recognized the absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, good character and reputation, and remorse.
*73 Considering all these circumstances, and relying on the prior jurisprudence of this court, the committee recommended that respondent be suspended from the practice of law for three months, fully deferred, subject to a two-year period of supervised probation with conditions, including attendance at Ethics School.
Neither respondent nor the ODC filed an objection to the hearing committee's recommendation.

Disciplinary Board Recommendation
After reviewing the record of this matter, the disciplinary board found the hearing committee's factual findings are not manifestly erroneous and adopted same. The board determined that respondent violated the Rules of Professional Conduct as charged in the formal charges. The baseline sanction for this misconduct is suspension.
The board found that respondent knowingly violated duties owed to his client by entering into a sexual relationship with her, which constitutes a prohibited conflict of interest. While there was potential for great harm to Ms. Gremillion in terms of custody, parental fitness, visitation, and community property, there is no evidence in the record that she suffered any actual harm due to her relationship with respondent.
The board determined that the record supports the aggravating factors of substantial experience in the practice of law and vulnerability of the victim. The record supports the following mitigating factors: absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, good character and reputation, and remorse.
Turning to the issue of an appropriate sanction, the board agreed that a fully deferred ninety-day suspension is warranted in this case, particularly because respondent has practiced without difficulty for over thirty years. Accordingly, the board recommended that respondent be suspended from the practice of law for ninety days, fully deferred, subject to the condition that he obtain a total of eight additional hours of continuing legal education, four each in the areas of ethics and professionalism.[1] The board also recommended that respondent be assessed with all costs of these proceedings.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.

DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La. 1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The factual findings of the hearing committee are supported by the record. Respondent violated Rules 1.7 and 8.4(a) of the Rules of Professional Conduct by engaging in a consensual sexual relationship with a client whom he was representing in *74 a divorce matter. This conduct had the potential to cause harm to respondent's client, but as the committee and board found, little or no actual harm resulted in this case.
Having found professional misconduct, we now turn to a discussion of an appropriate sanction. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
The aggravating factors present are respondent's substantial experience in the practice of law and vulnerability of the victim. In mitigation, we note that respondent has no prior disciplinary record, was cooperative with the ODC, and has expressed remorse. Furthermore, evidence was introduced at the hearing of respondent's good character and reputation in the community in which he practices.
We now turn to the issue of the sanction. We first had the opportunity to address the issue of a sexual relationship between a lawyer and a client in In re: Ashy, 98-0662 (La.12/1/98), 721 So.2d 859. In Ashy, the lawyer falsely advised his female client that she might be the subject of a criminal investigation. During a meeting with the client, Ashy told her that she was "very attractive," asked if she "minded" if he "hit on her," and kissed her without her consent. At a later meeting, Ashy told the client that he wanted to have a sexual relationship with her. He kissed her, touched her breast and buttocks, and placed her hand on his crotch. He also gave her some money to buy lingerie and a dress to wear to his office. Ashy told the client that if she did not sleep with him he would do what he could to help her, but he couldn't guarantee results; however, if she did sleep with him, "everything would disappear." The client eventually learned that no warrant was going to be issued for her arrest and filed a complaint against Ashy with the ODC.
We subsequently determined that Ashy's conduct violated Rule 2.1, because his sexual overtures to his client threatened his ability to exercise independent professional judgment and render candid advice. Likewise, we identified a violation of the conflict of interest provisions in Rule 1.7, as Ashy placed his own interests ahead of his client's interests by refusing to put forth his best efforts unless the client responded to him sexually. After conducting a detailed analysis of the jurisprudence in other states, we found a wide range of sanctions have been imposed in similar cases of sexual misconduct, ranging from public reprimands to disbarment. We concluded that the appropriate sanction for Ashy's misconduct was a two-year suspension.
Following Ashy, we had little trouble imposing significant sanctions in cases in which the lawyer's sexual relationship with a client caused actual harm. In In re: Schambach, 98-2432 (La.1/29/99), 726 So.2d 892, the attorney was suspended for three years for using a consensual sexual relationship to obtain more than $40,000 from his client, which he refused to repay and later discharged in bankruptcy. In In re: Touchet, 99-3125 (La.2/4/00), 753 So.2d 820, the attorney was disbarred for making unwanted sexual demands on six female clients and soliciting sexual favors in lieu of legal fees.
*75 In 2000, we were confronted for the first time with the case of a mutually consensual lawyer-client relationship. In In re: Gore, 99-3213 (La.1/28/00), 752 So.2d 853, the lawyer began a consensual sexual relationship with a female client whom he represented in a variety of business matters. While the sexual relationship was ongoing, Gore represented the client in connection with her divorce from her husband. Before filing the divorce pleadings, Gore failed to investigate his client's representation that she and her husband had lived separate and apart for more than six months; in fact, the couple still lived together. Considering the conflict of interest issue, we distinguished Ashy and Schambach, supra, on the ground that Gore had not attempted to use his position as attorney to coerce sex or money from the client. Nonetheless, we expressed concern that "the relationship had the potential to create a conflict of interest, especially in light of the fact that [Gore] was representing [the client] in connection with a divorce proceeding." We accepted a petition for consent discipline and imposed a six-month suspension, followed by two years of supervised probation.
More recently, we considered a case which in some respects was similar to both Gore and Ashy. In In re: DeFrancesch, 04-0289 (La.7/2/04), 877 So.2d 71, the lawyer had a prior sexual relationship with a woman whom he later agreed to represent in a criminal case. The fee for the representation was $2,000, which the client was supposed to pay in weekly installments. On one occasion when the client failed to pay her installment, DeFrancesch proposed that she accompany him to Mississippi for a sexual rendezvous as a "punishment" for failing to pay timely. DeFrancesch later analogized his demand for sex "as a penalty fee, like, [on a] Discover card." When the client balked at the demand, DeFrancesch assured her that so long as she paid her fee installments on time each week thereafter, "this will never happen again, okay. But, if you miss, then that's the punishment, that's the late fee, . . ." Ultimately, DeFrancesch and the client did not engage in sexual relations, as DeFrancesch told the client that there was "no sense aggravating everybody over this." At the client's request, DeFrancesch subsequently appeared in court when she entered a guilty plea in her criminal case.
We noted that as in Gore, DeFrancesch and the client had a prior consensual sexual relationship, although the relationship had terminated by the time DeFrancesch made the "sex as a penalty" demand. As in Ashy, there was an element of coercion in DeFrancesch's implied threat that he might cease to represent the client if she did not submit to the "sex as a penalty" arrangement; however, unlike Ashy, DeFrancesch never threatened to limit his efforts on his client's behalf if she refused to engage in a sexual relationship with him. Indeed, we pointed out that DeFrancesch ultimately withdrew his request for sex and continued to represent the client in her criminal case until it was concluded to her satisfaction. We continued:
Nonetheless, as we observed in Ashy, the particular evil that results from a lawyer's sexual relationship with a client is the loss of emotional detachment which in turn threatens the objectivity and reasonableness that form the basis of the lawyer's independent professional judgment. Ashy, 98-0662 at p. 15, 721 So.2d at 867 (quoting Annotations to Model Rule 2.1). The potential for harm which results whenever a lawyer allows his personal interests to conflict with his client's interests is so great that any such violation must be viewed as being very serious, even if actual harm is not readily identifiable. The base-line *76 sanction for this misconduct is a suspension from the practice of law. [Emphasis added.]
Considering all the circumstances, we suspended DeFrancesch for two years, with all but one year and one day deferred.
Based upon this jurisprudence, we find that the fully deferred suspension recommended in this matter is appropriate. Like the respondent in Gore, respondent did not cause actual harm to his client as a result of their sexual relationship, nor did he threaten to limit his efforts on her behalf unless she agreed to the sexual relationship. However, this case does not involve the additional misconduct seen in Gore, and thus does not warrant the period of actual suspension we imposed in that case. Accordingly, we will adopt the disciplinary board's recommendation and suspend respondent from the practice of law for ninety days, fully deferred with the conditions recommended by the board.

DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, it is ordered that Darrel Dee Ryland, Louisiana Bar Roll number 11565, be and he hereby is suspended from the practice of law for a period of ninety days. This suspension shall be fully deferred, subject to respondent's successful completion of the additional hours of continuing legal education recommended by the board. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10. 1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] One board member dissented, concluding that a fully deferred suspension is too lenient.