PER CURIAM.*
11 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Noland James Hammond, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public. In re: Hammond, 05-2538 (La.12/22/05), 917 So.2d 433.
UNDERLYING FACTS AND PROCEDURAL HISTORY
In March 2008, the ODC filed twenty-four counts of formal charges against respondent. The formal charges can be grouped together into three broad categories: Counts I through XII, which involve inappropriate sexual contact with clients, many of whom were inmates housed at correctional facilities in the Alexandria area;[1] Counts XIII through XXIII, which involve neglect of legal matters, failure to communicate with clients, and failure to properly terminate the representation of clients, including returning files and refunding unearned fees; and Count XXIV, which involves engaging in the unauthorized practice of law following interim suspension. Because the sexual misconduct and the unauthorized practice of law | ^charges, standing alone, support the disciplinary board’s recommendation of permanent disbarment, our opinion will focus only on those counts.

Counts I & II

G.L. and I.S. were inmates at the Bunk-ie Detention Center in Avoyelles Parish. In October 2003, respondent visited the jail and told Mr. L. and Mr. S. that he was an attorney, that he was familiar with the circumstances of their cases, and that he believed they had been wrongfully convicted.[2] Respondent advised the men that he believed he could obtain the reversal of *202 their convictions, resulting in their immediate release from jail, but that he would need samples of their semen in order to do so.
The following day, respondent returned to the jail accompanied by a sixteen-year old girl whom he identified as his “assistant.” Under the pretense of requiring an attorney-client contact visit, respondent obtained permission to meet with Mr. L. and Mr. S. in a private office, along with his “assistant.” Once the four were alone, the girl performed oral sex on Mr. L. and Mr. S. while respondent videotaped the encounter.[3]
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.7(a)(2) (a lawyer shall not represent a client if there is a significant risk that the representation will be materially limited by a personal interest of the lawyer), 1.8(b) (a lawyer shall not use information relating to the representation of a client to the disadvantage of the client), 4.1(a) (making a |sfalse statement of material fact or law to a third person), 4.4(a) (in representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act, especially one that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).[4]

Count III

In November 2002, Vernon Creecy, the warden of the Rapides Parish Detention Center, filed a complaint against respondent with the ODC. According to the complaint, inmates were frequently found in possession of contraband after their visits with respondent, including cell phones, cigars, and money.
During its investigation of Warden Creecy’s complaint, the ODC obtained tapes and transcripts of telephone calls recorded between respondent and inmates housed at correctional facilities in the Alexandria area.[5] In these conversations, which are extremely graphic, respondent solicited inappropriate sexual contact between himself and the inmates.
*203 1 ,tThe ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.7(a)(2), 8.4(a), 8.4(b), 8.4(c), and 8.4(d).

Count IV

In 1998, M.M. retained respondent to defend him in a criminal case in which he was charged with possession of drugs. Mr. M. paid respondent a fee of $6,000. During the course of the representation, respondent informed Mr. M. that the district attorney had offered him a plea with a sentence of sixty years.
Respondent subsequently told Mr. M. that in order to defend him, he would need to see Mr. M. in his boxer shorts. Respondent took Mr. M. to his (respondent’s) home and told him to strip down to his boxer shorts. Respondent also told Mr. M. that he needed to achieve an erection, which Mr. M. could not do. Respondent then turned on a sexually explicit video, but this did not help Mr. M. achieve an erection, so respondent began stroking Mr. M.’s penis. Scared, Mr. M. jumped away, got dressed, and left respondent’s home.
The following Monday, respondent met Mr. M. in court for a pre-trial conference and told him that the district attorney had offered him a plea deal of five years incarceration beginning immediately. Mr. M. fired respondent and reported his conduct to Alexandria attorney Bridgett Brown, who had previously represented Mr. M. Through Ms. Brown, Mr. M. accepted the plea arrangement and was sentenced to serve five years in jail.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.7(b) (a lawyer shall not represent a client if there is a significant risk that the representation will be materially limited by a | .^personal interest of the lawyer),[6] 1.8(b), 7.1 (communications concerning a lawyer’s services), 8.4(a), 8.4(b), and 8.4(c).

Count V

In June 2003, C.S. filed a complaint against respondent with the ODC. According to the complaint, Mr. S., who was then incarcerated, paid respondent $400 to represent him in a probation matter. Mr. S. attempted to discuss the case with respondent on numerous occasions, but in response, respondent made sexual advances toward Mr. S. Respondent promised to help Mr. S. get out of jail if he did not say anything about the sexual advances.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.7(a)(2), 4.4(a), 8.4(a), 8.4(b), 8.4(c), and 8.4(d).

Count VI

In May 2003, D.H. filed a complaint against respondent with the ODC. According to the complaint, Mr. H. retained respondent to represent him in a criminal matter. When respondent visited Mr. H. in the jail where he was incarcerated, he would not discuss the case, but would use the visits to make sexual advances toward Mr. H. Respondent also gave Mr. H. his home telephone number to engage in sexually explicit conversations. Finally, Mr. H. alleged that respondent instructed him to give false testimony in an unrelated criminal proceeding so that he could get out of jail. Mr. H. eventually discharged respondent, who returned a portion of the file to Mr. H., claiming the remaining portion was lost.
|fiThe ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules *204 1.7(a)(2), 1.16(d) (obligations upon termination of the representation), 4.4(a), 8.4(a), 8.4(b), 8.4(c), and 8.4(d).

Count VII

In 1999, P.C. filed a complaint with the ODC, alleging that respondent sexually harassed him and that his conversations with respondent were of a sexual nature. The complaint was dismissed in 2000 for lack of clear and convincing evidence to support the allegations; however, in light of numerous similar complaints filed subsequent to the dismissal, the ODC reopened Mr. C.’s complaint in 2004.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.7(a)(2), 4.4(a), 8.4(a), 8.4(b), 8.4(c), and 8.4(d).

Counts VIII and IX

In 2002, G.S. retained respondent to file an application for post-conviction relief, the deadline for which was August 2003. Mr. S.’s mother, C.W., paid respondent a fee of $5,500. During the course of the representation, respondent solicited sexual acts from Mr. S., suggesting he would work more diligently on the case if Mr. S. were receptive. Respondent also had Mr. S. telephone him from the prison facility where he was incarcerated, and during these conversations, engaged Mr. S. in graphic sexual conversations.
In 2005, Mr. S. filed a complaint with the ODC, alleging respondent had done no legal work even though he had been paid in full. Subsequently, respondent visited 17Mr. S. in jail and presented him with an affidavit withdrawing the complaint, which he instructed Mr. S. to sign.
A hearing in Mr. S.’s legal matter was held on January 13, 2006, after the date respondent was placed on interim suspension. Attorney Attlah Burrell appeared on Mr. S.’s behalf at the hearing. Mr. S. was not given the opportunity to consent to Ms. Burrell’s representation. At the hearing, the court found Mr. S.’s matter was moot. Following the hearing, respondent and Ms. Burrell refunded $1,500 of the $5,500 fee paid by C.W., despite the request of Mr. S. and Ms. W. that the entire fee be refunded.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.7(a)(2), 8.4(b), 8.4(c), and 8.4(d).

Count X

In June 2000, Mr. and Mrs. N.D., Sr. paid respondent $4,400 to file an application for post-conviction relief on behalf of their son, N.D., Jr.[7] Respondent met with Mr. D., Jr. to discuss the matter, but during the meeting, he grabbed Mr. D., Jr.’s penis and said he wanted to have sex with him. Once it became clear that Mr. D., Jr. would not engage in sex acts with respondent, respondent did not work on the case any further. He then withdrew from the case in November 2001. Respondent did not complete the representation and refused to refund any of the fee he was paid.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.5(f)(5) (failure to refund an unearned fee), 1.7(a)(2), 1.16(d), 8.4(c), and 8.4(d).
*205 | gCount XI
In February 2004, T.G. retained respondent to represent him in a criminal matter. Respondent was paid $10,000 for the representation. According to Mr. G., respondent made inappropriate sexual solicitations toward him when he went to respondent’s office to discuss his case. Eventually, Mr. G. stopped going to respondent’s office without asking a family member to accompany him. Mr. G. also stated that once he refused respondent’s sexual advances, respondent no longer pursued the criminal case with the same level of interest.
Nevertheless, on respondent’s advice, Mr. G. pled guilty to the criminal charge against him. He was sentenced to serve five years in prison at hard labor without benefit of parole, probation, or suspension of sentence. However, Mr. G. had understood from respondent that because he had no criminal record, he would be sentenced to probation with no jail time. Consequently, Mr. G. discharged respondent and hired another attorney. Mr. G. was subsequently allowed to plead to a lesser charge and to serve his remaining sentence on probation and out of jail.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1 (failure to provide competent representation to a client), 1.4 (failure to communicate with a client), 1.7(a)(2), and 8.4(c).

Count XII

D.N. retained respondent to represent him following a criminal conviction. Mr. N.’s family paid $4,100 of respondent’s $5,500 fee to handle the matter. Respondent visited Mr. N. in prison on several occasions after he was hired, but never discussed any progress being made on the case. Rather, he solicited sexual favors from Mr. N. |9and asked to see Mr. N.’s penis. At one point, respondent began asking Mr. N. about the remaining payments due on the retainer fee. Respondent offered to waive the final payments if Mr. N. would engage in sexual acts with him. Mr. N. refused. Thereafter, respondent refused to accept Mr. N.’s telephone calls and the representation was not completed.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.4, 1.7(a)(2), and 1.16(d).

Counts XIII-XXIII

These counts involve allegations that respondent neglected his clients’ legal matters, failed to communicate with his clients, and failed to properly terminate the representation of his clients, including returning files and refunding unearned fees. As previously discussed, the specific facts of these counts have been omitted from this opinion.

Count XXIV

Following respondent’s December 22, 2005 interim suspension, his law school classmate, Baton Rouge attorney Attlah Burrell, agreed to help him with his pending cases and to adopt his Alexandria law office as her “satellite office.” Respondent worked in the office as a paralegal; his mother, Alice Hammond, worked as the secretary and notary; and his aunt, Mary Hammond, worked as the receptionist. Ms. Burrell was in the Alexandria office one or two days per week and remained in Baton Rouge during the rest of the week.[8]
*206 li (Although respondent contended that he was at all times acting under the authority and supervision of Ms. Burrell, the ODC received information to the contrary from a complainant, C.W. According to Ms. W., respondent told her that his license had been suspended; however, the law office and the clients were still his, and that Ms. Burrell was in the office only to go to court. The ODC also discovered that respondent was negotiating personal injury settlements with insurance adjusters and disbursing the settlement funds to the clients.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 5.5(a)(b) (engaging in the unauthorized practice of law), 5.5(e)(4) (a suspended lawyer shall not receive, disburse, or otherwise handle client funds), 8.4(a), 8.4(c), and 8.4(d).
DISCIPLINARY PROCEEDINGS
Respondent answered the formal charges filed by the ODC and generally denied any misconduct. The matter then proceeded to a formal hearing on the merits, which was conducted by the hearing committee over seven days in January and March 2009. Numerous witnesses testified during the hearing, including respondent; respondent’s mother, Alice Hammond, and his aunt, Mary Hammond; the inmates and their family members involved in each of Counts I — XII; attorneys Kenneth Rodenbeck, Phyllis Mann, and Bridgett Brown; Warden Vernon Creecy; several personal injury clients who dealt with respondent after his interim suspension, not knowing he was suspended; several claims adjusters who settled personal injury claims with respondent after his interim suspension, all believing he was licensed to practice law; and attorney Attlah Burrell.
11T Hearing Committee Report
After considering the evidence and testimony presented at the hearing, the hearing committee made factual findings which were generally consistent with the underlying facts as set forth above in connection with the formal charges. In addition, the committee made these findings:
Counts I & II — Phyllis Mann, a central Louisiana criminal defense attorney, complained that her former client, G.L., related to her that on October 15, 2003, respondent appeared at the Bunkie Detention Center with his assistant at the request of the inmate’s relatives. Respondent claimed that if semen samples could be obtained from Mr. L. and I.S., respondent would be able to obtain their releases from prison. Mr. S. did not testify at the formal hearing, but Mr. L. testified that respondent’s assistant performed oral sex on him and Mr. S. while respondent filmed these acts.[9] Mr. L. also testified that upon ejaculation, his semen was deposited on a piece of plastic which respondent put inside his briefcase and removed from the prison. The hearing committee found Mr. L.’s testimony credible in this regard, and rejected the testimony of both respondent and his assistant that the events Mr. L. described did not occur.
Based on these findings, the committee concluded that respondent violated Rules 1.7(a)(2), 4.4(a), 8.4(a), 8.4(b), 8.4(c), and 8.4(d) in connection with Counts I and II. The committee found the other violations of the Rules of Professional Conduct al *207 leged in Counts I and II were not proven by clear and convincing evidence.
Count III — Vernon Creecy, a retired warden with the Rapides Parish prison system, complained that respondent introduced contraband into secure areas of a 112prison and that respondent engaged in inappropriate solicitation of sexual acts from inmates during tape recorded telephone conversations. The committee did not find these allegations were proven by clear and convincing evidence, because (1) according to the testimony of Warden Creecy and other employees of the prison, several of the inmates found with contraband were not thoroughly searched prior to their private meetings with respondent, and (2) respondent testified that the conversations recorded on tape were with inmates whom he had known for long periods of time but never represented as an attorney. The committee did find, however, that the tape recorded conversations, which were characterized as being “of a graphic sexual nature,” were probative and relevant in two regards: (a) they show a pattern and practice of respondent attempting to engage in sexual conversations and/or sexual solicitations with inmates, and (b) they lend credibility to the other allegations of inappropriate sexual misconduct set forth in the formal charges.
Coimt TV — The committee found that M.M. hired respondent to handle a criminal case. During the representation, respondent brought Mr. M. to his home, telling him that in order to defend him, he would need to see him in his boxer shorts. Respondent grabbed Mr. M.’s penis and began stroking it when Mr. M. could not achieve an erection. The committee also found that respondent told Mr. M. that in order to help with his case, he would have to have sex with respondent. Thereafter, Mr. M. fired respondent and reported the incident to attorney Bridgett Brown, who had previously represented Mr. M. The evidence reflects that respondent subsequently tried to contact Mr. M. in an effort to get him to retract his allegations of wrongdoing. Furthermore, the committee found that Ms. Brown convened a meeting to discuss the allegations of sexual misconduct against respondent. In attendance at the meeting were Ms. Brown, Mr. M., respondent’s mother, and |1sattorney Ed Larvadain. While respondent’s mother denied this meeting took place, the committee did not find her testimony credible.
Based on these findings, the committee concluded that respondent violated Rules 1.7(b),[10] 1.8(b), 7.1, 8.4(a), 8.4(b), and 8.4(c) in connection with Count IV. The committee recommended that respondent be required to make restitution to Mr. M. in the amount of $6,000.
Count V — The committee found that although he was paid $400 to handle C.S.’s probation matter, respondent did little, if anything, toward obtaining the relief Mr. S. sought. The committee also noted that respondent had previously represented Mr. S. while working as an indigent defender; however, at that time, Mr. S. related to Ken Rodenbeck, the chairman of the Indigent Defender Board, that respondent had made unwarranted sexual advances toward him. The committee found credible Mr. Rodenbeck’s testimony that this was one of the reasons why respondent’s contract with the IDB was not renewed. The committee likewise found credible Mr. S.’s testimony, and rejected affidavits prepared by respondent that were used in an attempt to discredit Mr. S.’s testimony. Mr. S. admitted he cannot read and was unaware of the contents of the affidavits when he signed them. Further, the committee did not find that Mr. *208 S.’s testimony was discredited by the fact that he used respondent’s services on two occasions, as Mr. S. testified that he felt he did not have a choice of attorneys and that money was also a concern.
Based on these findings, the committee concluded that respondent violated Rules I.7(a)(2), 4.4(a), 8.4(a), 8.4(b), 8.4(c), and 8.4(d) in connection with Count V.
Count VI — The committee found that during respondent’s representation of D.H. in a criminal matter, respondent instructed him to give false testimony in | ^connection with an unrelated criminal proceeding in which Mr. H. was a witness. The committee also determined -that respondent attempted to get Mr. H. to sign an affidavit which would discredit a complaint to the ODC previously filed by Mr. H. However, the committee did not find Mr. H.’s allegations of sexual misconduct by respondent were proven by clear and convincing evidence, as Mr. H. was very vague and nonspecific in his recollection of this issue.
Based on these findings, the committee concluded that respondent violated Rules 4.4(a),[11] 8.4(b), 8.4(c), and 8.4(d) in connection with Count VI. The committee found the other violations of the Rules of Professional Conduct alleged in Count VI were not proven by clear and convincing evidence.
Count VII — P.C. alleged that respondent made inappropriate sexual advances toward him. Following the filing of a complaint with the ODC, Mr. C. executed an affidavit acknowledging that he had received his file and that respondent had done nothing improper in connection with the handling of his case. Mr. C. later repeated his allegations of sexual harassment in pleadings filed with the Rapides Parish Clerk of Court. However, in light of the conflicting statements made by Mr. C. and considering his demeanor at the hearing, the committee did not find him credible. Accordingly, the committee did not find the violations of the Rules of Professional Conduct alleged in Count VII were proven by clear and convincing evidence.
Counts VIII and IX — G.S. was incarcerated and serving a lengthy prison sentence when he hired respondent to help with post-conviction relief. His mother paid respondent a fee of $5,500. Mr. S. testified that respondent sexually propositioned him and engaged in graphic sexual conversations with him over the telephone. Mr. S. did not feel that respondent adequately worked on his case and 11sfiled a complaint with the ODC. He was subsequently visited by respondent and signed an affidavit discrediting the ODC complaint. Mr. S. explained that he signed the affidavit because he was concerned about the large sum of money his mother had paid for respondent’s services. The committee found Mr. S.’s testimony in this regard was credible and worthy of belief, and determined that respondent did not perform the agreed upon work in a timely manner.
A hearing was held in Mr. S.’s legal matter after the date of respondent’s interim suspension. Mr. S.’s mother, C.W., heard about respondent’s suspension through the media, but respondent told her he was still operating his office and that attorney Attlah Burrell, who appeared on Mr. S.’s behalf at the hearing, was there simply to “go to court.” Following the hearing, at which the court found that Mr. S.’s matter was moot, Ms. Burrell and respondent refunded $1,500 of the $5,500 fee. Ms. W. asked for a refund of the entire fee, which request was denied.
*209 Based on these findings, the committee concluded that respondent violated Rules 1.3, 1.7(a)(2), 8.4(c), and 8.4(d) in connection with Counts VIII and IX. The committee did not address the alleged violation of Rule 8.4(b). The committee recommended that respondent be required to make restitution to Ms. W. in the amount of $5,500, less a credit for the $1,500 previously paid.
Count X — Respondent was retained to represent N.D., Jr. in a post-conviction relief claim. The committee found credible and believable Mr. D., Jr.’s testimony that during a conference relative to his legal matters, respondent grabbed Mr. D., Jr.’s penis without permission. Once it became clear that Mr. D., Jr. would not engage in sex acts, respondent did not work on his case any further, causing Mr. D., Jr. to lose his only opportunity to address any issues relative to his post-conviction relief. Respondent also refused to refund any part of the $4,400 fee he was paid.
11fiBased on these findings, the committee concluded that respondent violated Rules 1.3, 1.5(f)(5), 1.7(a)(2), 8.4(c), and 8.4(d) in connection with Count X. The committee found the other violations of the Rules of Professional Conduct alleged in Count X were not proven by clear and convincing evidence. The committee recommended that respondent be required to make restitution to Mr. D., Jr. in the amount of $4,400.
Count XI — T.G. retained respondent to defend him in a criminal case, paying him $10,000. The committee noted there was conflicting testimony as to whether Mr. G. understood that he would be incarcerated for a period of five years or whether a lesser sentence would be imposed. That conflict was resolved in subsequent court proceedings. The committee found, however, that there was clear and convincing evidence that Mr. G. was the victim of unwarranted sexual advances made by respondent during office visits, as a result of which Mr. G. stopped going to respondent’s office alone.
Based on these findings, the committee concluded that respondent violated Rules 1.7(a)(2) and 8.4(c) in connection with Count XI. The committee found the other violations of the Rules of Professional Conduct alleged in Count XI were not proven by clear and convincing evidence.
Count XII — The committee found credible D.N.’s testimony that during prison visits, respondent solicited sexual favors from him and asked to see his penis. The committee further found that respondent did not obtain any legal relief for Mr. N., and that when his sexual advances were rebuffed, he ceased communicating with Mr. N.
Based on these findings, the committee concluded that respondent violated Rules 1.4 and 1.7(a)(2) in connection with Count XII. The committee found the other violations of the Rules of Professional Conduct alleged in Count XII were not proven |17by clear and convincing evidence. The committee recommended that respondent be required to make restitution to Mr. N. in the amount of $4,100.
Addressing respondent’s defenses to the sexual misconduct alleged in Counts I through XII, the committee specifically rejected respondent’s contention that the conduct did not occur. The committee also rejected respondent’s argument that his conduct was not of such a nature as to be a violation of the Rules of Professional Conduct, citing the prior jurisprudence of this court involving attorneys who engaged in sexual activity with clients.[12]
*210 Counts XIII-XXIII — A discussion of these counts has been omitted from this opinion.
Count XXIV — C.W. testified that respondent told her that although he was suspended, his law office was still his, the clients were still his, and that Ms. Burrell was only in the office to go to court. The committee found this testimony was consistent with the testimony of three insurance adjusters, who after dealing with respondent were all under the impression that he was the attorney handling the various cases. Specifically, during recorded statements given by personal injury clients, the adjusters referred to respondent as the attorney. Respondent did absolutely nothing on the record to correct the mischaracterization of his status, which the committee believed he had an obligation to do. Rather, by his silence, respondent perpetuated the continued actions of others in dealing with him as a lawyer. The committee also found that respondent signed up new personal injury clients and negotiated and distributed settlements on behalf of existing clients, all without disclosing his suspension from the practice of law, thereby causing the clients |1sto execute documents signing away their legal rights without the benefit of advice from a licensed attorney.
Ms. Burrell testified that at the time of respondent’s interim suspension she agreed to assist him with his pending cases. While Ms. Burrell may have initially been motivated to help a friend, the committee found it telling that she later realized the situation presented a “business opportunity” for her to have a satellite office in central Louisiana. The committee observed that both respondent and Ms. Burrell had a selfish interest in declaring that respondent was working under Ms. Burrell’s supervision and instruction. Although in many cases these instructions were allegedly communicated in writing, according to the testimony of Ms. Burrell and respondent, the committee noted that no documentation of the written communications were submitted into evidence to substantiate their claims. The committee found that the testimony presented by respondent and Ms. Burrell regarding their arrangement was simply not believable.
Based on these findings, the committee concluded that respondent violated Rules 5.5(a)(b) and 5.5(e)(4) in connection with Count XXIV. The committee did not address the other violations of the Rules of Professional Conduct alleged in Count XXIV.
The committee found respondent knowingly and intentionally violated duties owed to his clients, the legal system, and the legal profession, causing actual, serious harm. The committee determined that the baseline sanction for respondent’s misconduct is disbarment.
In aggravation, the committee found the following factors: a dishonest or selfish motive, a pattern of misconduct, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, indifference to making restitution, and | ^illegal conduct. The committee did not find any mitigating factors applicable to Counts I-XII or Count XXIV.
Considering these circumstances, particularly the extent of the aggravating factors and the absence of mitigating factors, the committee determined that an upward deviation from the baseline sanction is appropriate. Accordingly, the committee recommended respondent be permanently disbarred.
*211 Respondent filed an objection to the hearing committee’s report and recommendation.

Disciplinary Board Recommendation

After reviewing this matter, the disciplinary board found that for the most part, the hearing committee’s factual findings are not manifestly erroneous. The board identified a few instances in which the committee made erroneous findings, and corrected those as follows:
(1) In Count III, the committee found respondent had sexually explicit conversations with inmates whom he had known for long periods of time but never represented as an attorney. However, respondent’s testimony clearly indicates otherwise. He testified that he represented a majority of the inmates as their attorney, but that they were friends before the representation. Respondent also stated that he engaged in these types of conversations with the inmates before there was an attorney-client relationship, though it was unclear whether respondent was representing these inmates as an attorney at the time the conversations occurred.
(2) In Count IV, the committee found respondent told M.M. that in order to help with his case, Mr. M. would have to have sex with respondent. However, Mr. |2qM. never made such a claim in his testimony before the hearing committee. Furthermore, nothing in the record supports that Mr. M. ever made such a claim.
(3) In Count X, the committee found that as a result of respondent’s lack of effort, N.D., Jr. lost his only opportunity to address any issues relative to his post-conviction relief. However, nothing in the record indicates that respondent’s neglect caused a loss of rights (although certainly respondent’s neglect may have negatively impacted Mr. D., Jr.’s post-conviction matter).
Based on the factual findings, the board determined the committee appropriately applied the Rules of Professional Conduct as they relate to the core misconduct alleged in the formal charges. However, the board found the committee did not apply or misapplied several rules which are ancillary to the core misconduct, and corrected the committee’s conclusions as follows:
(1) In Counts I and II, the committee found respondent did not violate Rule 1.8(b). The evidence indicates that respondent, aware of the circumstances of the convictions of Mr. L. and Mr. S., told the men he could secure their release from jail by obtaining semen samples. Thus, respondent used information related to their case to coerce Mr. L. and Mr. S. to engage in sexual acts with an “assistant” while he videotaped the acts. The board found this conduct is a violation of Rule 1.8(b).
Also in Counts I and II, the committee found respondent violated Rule 4.4(a), which states that a lawyer shall not use means having no substantial purpose other than to embarrass, delay, or burden a third person. The rule is not applicable to clients such as Mr. L. and Mr. S., but only to third persons. Therefore, the board found respondent did not violate Rule 4.4(a).
| ?A Finally, to the extent it was unclear from the committee’s report, the board clarified that respondent violated Rule 8.4(c) by coercing Mr. L. and Mr. S. to engage in sexual acts under false pretenses.
(2) In Count IV, the committee found respondent violated Rule 7.1, which generally concerns the advertising and marketing of a lawyer’s services. The board found it is unclear how the factual allegations in the formal charges or the factual findings of the committee relate to this rule. While respondent made misrepre *212 sentations to Mr. M., it was not in the context of advertising his services. Therefore, the board found respondent did not violate Rule 7.1.
(3) In Count V, the committee found respondent violated Rule 4.4(a). However, an attorney-client relationship clearly existed between respondent and Mr. S. Therefore, Mr. S. is not a third party as contemplated by the rule. Furthermore, there is no allegation or evidence that respondent obtained evidence in Mr. S.’s matter that somehow violated the rights of a third party. Therefore, the board found respondent did not violate Rule 4.4(a).
Also in Count V, the committee found respondent committed a criminal act in violation of Rule 8.4(b). The board found that neither the factual allegations in the formal charges nor the factual findings of the committee clearly demonstrate a criminal act committed by respondent. Therefore, the board found respondent did not violate Rule 8.4(b).
(4) In Count VI, the committee found respondent did not violate Rule 8.4(a). However, by violating Rules 4.4(a), 8.4(b), 8.4(c), and 8.4(d) in conjunction with his representation of Mr. H., respondent violated Rule 8.4(a).
(5) In Count X, the committee concluded that respondent did not violate Rule 1.16(d), which requires that upon termination of the representation, a lawyer shall 1 g2take reasonable steps to protect a client’s interest, including returning any unearned fees and the client’s file. By-failing to refund any portion of the $4,400 fee paid by Mr. and Mrs. D., Sr., respondent violated Rule 1.16(d).
(6) Likewise, in Count XII, the committee concluded that respondent did not violate Rule 1.16(d). However, the committee apparently concluded that respondent did not earn the $4,100 fee paid by Mr. N., as the committee recommended respondent refund the entire fee. Therefore, respondent violated Rule 1.16(d).
(7)In Count XXIV, the committee concluded that respondent did not violate Rules 8.4(a), 8.4(c), and 8.4(d). However, the committee found that respondent engaged in the unauthorized practice of law while on interim suspension. Such conduct necessarily implicates violations of Rules 8.4(c) and 8.4(d), as respondent engaged in dishonest conduct (he ignored an order of this court and failed to inform prospective clients that he was not authorized to practice law) and conduct prejudicial to the administration of justice (respondent’s clients executed legal documents upon the advice of an attorney who was not authorized to give such advice). Furthermore, by violating these rules, respondent violated Rule 8.4(a).
The board determined respondent knowingly and intentionally violated duties owed to his clients, the public, the legal system, and the profession. He caused significant harm to several vulnerable clients by making unsolicited sexual advances toward them. In a few instances, respondent actually engaged in unsolicited or coerced sexual contact with vulnerable clients. To make matters worse, when clients resisted respondent’s sexual advances, he would cease working on then* legal matters without returning the unearned fees. Furthermore, respondent caused potential and actual harm to the legal system and the profession by engaging in the unauthorized practice of law. The baseline sanction for this misconduct is disbarment.
⅛⅛ mitigation, the board found respondent has suffered the imposition of other penalties or sanctions in that his sexual misconduct was covered by a local newspaper. In aggravation, the board found the following factors: prior disciplinary of *213 fenses,[13] a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, indifference to making restitution, and illegal conduct.
Based upon these findings, and considering the court’s prior jurisprudence involving similar misconduct, the board recommended respondent be permanently disbarred.
Respondent filed an objection to the disciplinary board’s report and recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
^Respondent has been charged with twenty-four separate counts of misconduct. Following a hearing, the hearing committee found respondent had violated multiple Rules of Professional Conduct in the majority of the counts involving sexual misconduct. The committee also found clear and convincing evidence that respondent had engaged in the unauthorized practice of law following his 2005 interim suspension. The disciplinary board affirmed the committee’s factual findings, with relatively minor exceptions, and found clear and convincing evidence to support numerous violations of the Rules of Professional Conduct. Respondent objects to these findings.
With respect to the issue of the sexual misconduct charged in Count III, respondent contends that during his telephone conversations with the inmates he was not speaking with clients, but rather with friends or former clients. This argument is not supported by the record, in particular respondent’s own testimony before the hearing committee. There, respondent acknowledged on cross-examination that he engaged in “sexual discussions over the phone ... with clients who were inmates, yes.” Based on this testimony, we find the hearing committee and the disciplinary board erred in finding Count III of the formal charges was not proven by clear and convincing evidence.
Turning to the issue of the unauthorized practice of law, both the committee and the board found respondent violated this court’s interim suspension order by engaging in the practice of law. This finding is supported by clear and convincing evidence.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high 12pStandards of conduct, protect the public, preserve the integrity of the profession, *214 and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent intentionally violated duties owed to his clients, the public, the legal system, and the profession, causing significant harm. There are numerous aggravating factors present, as found by the board, and there are no mitigating factors present. Under the circumstances, disbarment is clearly appropriate. However, in their respective reports, the hearing committee and the disciplinary board have concluded respondent’s offenses are so egregious that he should be permanently prohibited from applying for readmission to the bar.
We agree. In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might result in permanent disbarment. Respondent’s conduct falls squarely within the scope of Guideline 8 (following notice, engaging in the unauthorized practice of law subsequent to resigning from the Bar Association, or during the period of time in which the lawyer is suspended from the practice of law or disbarred). A person who is not licensed and eligible to practice law in Louisiana is not permitted to receive and handle client funds. Respondent clearly did so in several instances, as set forth in Count XXIV of the formal charges. Respondent also gave his clients legal advice and negotiated the settlement of their personal injury claims, all at a point in time when he knew he was not allowed to practice law in this state because he was on interim suspension.
| ^Considering respondent’s refusal to respect the authority of this court, as well as his use of his position as an attorney to obtain sexual gratification at the expense of his client’s interests, we find permanent disbarment is warranted. Accordingly, we will accept the disciplinaiy board’s recommendation and impose permanent disbarment. We will further order respondent to make restitution to his clients subject of the formal charges.
DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that the name of Noland James Hammond, Louisiana Bar Roll number 24116, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent shall make restitution to all clients subject of the formal charges and repay the Louisiana State Bar Association’s Client Assistance Fund any amounts paid to claimants on his behalf. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Retired Judge Robert L. Lobrano, assigned as Justice ad hoc, sitting for Justice Jeannette T. Knoll, recused.

. Because of the sensitive nature of the allegations in these counts, we have used the clients’ initials rather than their full names. See In re: Touchet, 99-3125 (La.2/4/00), 753 So.2d 820; see also La. R.S. 46:1844(W).

. Mr. L. had been convicted of aggravated battery; Mr. S. was convicted of rape. Both convictions stemmed from sexual contact with the female victim.

. When Mr. L. asked respondent why he needed the videotape, respondent explained that he “had to record this [the sex act] for the courthouse to know the semen came from you." Respondent then instructed Mr. L. and Mr. S. to ejaculate onto a piece of plastic which he had brought with him to the jail. Respondent wrapped up the plastic and put it into his briefcase, telling the men he intended "to show the Court that the semen they found in [the victim] wasn’t [theirs.]”

. In 2004, following an investigation by law enforcement into the serious allegations forming the basis of Counts I and II of the formal charges, a grand jury in Avoyelles Parish returned an indictment against respondent on two counts of obscenity. In June 2008, the criminal charges against respondent were dismissed by the Avoyelles Parish District Attorney's Office.

.The calls are recorded so that they can be monitored by jail officials for security purposes. Both parties to the call are made aware of the recording policy by an announcement at the beginning of the call.
During the pendency of the criminal proceedings against respondent, see note 4, supra, he filed a motion to suppress these tape recordings. The trial court denied the motion, and his writ applications seeking review of that ruling were likewise denied. See State v. Hammond, 07-1024 (La.App. 3rd Cir. 10/23/07), — So.3d-, writ denied, 07-2265 (La. 1/25/08), 973 So.2d 760 (Knoll, J., recused).

. Rule 1.7(b) was applicable at the time of respondent’s alleged misconduct in Count IV. This provision is now set forth at Rule 1.7(a)(2).

. Prior to this time, Mr. D., Jr. had already filed a pro se application for post-conviction relief, to which no answer was filed by the district attorney. Mr. and Mrs. D., Sr. hired respondent because they were concerned a pro se application would not be given serious consideration by the courts.

. On February 20, 2008, this court placed Ms. Burrell on interim suspension for threat of harm to the public in In re: Burrell, 08-0327 (La.2/20/08), 974 So.2d 1279. Any findings of fact we make in the instant case should not be interpreted as being controlling in the disciplinary proceedings pending against Ms. Bur-rell.

. Mr. S.’s mother testified, although her testimony regarding the occurrence of these events was hearsay. She did, however, testify that respondent contacted her and asked her to intercede with her son to coach him as to what to say to law enforcement regarding the incident. Upon those matters as to which Mr. S.’s mother had direct knowledge, the committee found her to be credible.

. The committee incorrectly referenced Rule 1.7(a)(2) in this count.

. The committee incorrectly referenced Rule 1.16(d) in this count, but is clear in context that the committee intended to find a violation of Rule 4.4(a).

. See In re: Ryland, 08-0273 (La.6/6/08), 985 So.2d 71; In re: Touchet, 99-3125 *210 (La.2/4/00), 753 So.2d 820; In re: Ashy, 98-0662 (La.12/1/98), 721 So.2d 859.

. In 2001, respondent was suspended by this court for four months, fully deferred, for incompetence, neglect, failure to communicate with a client, and failure to cooperate with the ODC in its investigation. In re: Hammond, 01-0318 (La.6/29/01), 789 So.2d 1259.